IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Cincinnati Bell Wireless LLC, | : | |
| | : | Case No. 1:07-cv-022 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART AND |
| City of Middletown, Ohio, | : | DENYING IN PART MOTIONS FOR |
| Planning Commission, *et al.*, | : | SUMMARY JUDGMENT |
| | : | |
| Defendants. | : | |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (doc.

22) and Defendants' Motion for Partial Summary Judgment (doc. 25).  Plaintiff Cincinnati Bell

Wireless ("Cincinnati Bell") alleges that the Defendants, the City of Middletown, Ohio Planning

Commission and its members, violated four provisions of the Telecommunications Act of 1996

("the Act"), 47 U.S.C. § 332(c)(7), when they denied Cincinnati Bell's application to erect a

wireless communications facility in Middletown.  For the reasons that follow, the Court finds

that Defendants violated three provisions of the Act.  Both pending motions are **GRANTED IN**

**PART AND DENIED IN PART**.

I.      BACKGROUND[1]

A.      **Introduction and City Zoning Regulation**

Cincinnati Bell seeks to construct a 150-foot wireless communications tower in

Middletown on a publicly-owned 3.36-acre lot known as the Kensington Pump Station site

---

[1] Unless otherwise noted, the statement of facts is derived from Defendants' Proposed
Undisputed Facts (doc. 25 at 2-3) and Plaintiff's Response (doc. 31) thereto.

("Kensington site").[2]  The Kensington site is zoned D-2 residential.  Cincinnati Bell's proposed

tower would replace an existing 100-foot communications tower at the Kensington site.  (A.R. at

0113.)[3]  The City maintains other equipment, including an equipment shed, at the Kensington

site which would remain.  (A.R. at 0113-0114.)

The Middletown Zoning Code § 1224(b) permits the construction of wireless

communication facilities in multiple zoning districts subject to the plan approval process, but not

in D-2 residential districts.  Pursuant to Zoning Code § 1224.24(i), wireless towers may be

constructed in a D-2 residential district, but only on publicly-owned property.  That section

further provides:

> Standards for free-standing towers on publicly-owned property in residential
> districts shall be as follows:
>> (1) The publicly-owned property must be leased from the City or other
>> public entity at its sole discretion.
>> (2) The publicly-owned property must be a minimum of four acres in area.
>> (3) The maximum height of any tower in such area shall not exceed 150
>> feet.
>> (4) No tower shall be located within 150 feet of a public street or property
>> line abutting a residential district.  If the property abuts a commercial or
>> industrial district, the setback for such property line shall be reduced to 50
>> feet.
>> (5) All design standards set forth in division (d) hereof shall apply to
>> towers under this division, except for setback requirements set forth in
>> division (d)(6) thereof.

Zoning Code § 1224.24(i).[4]

The Zoning Code also requires each wireless telecommunication company ("telecom") to

co-locate multiple wireless facilities on buildings, structures, or communication towers "except

---

[2] The site also is known as the South Highlands Cell Site.

[3] The Administrative Record was filed at CM/ECF docs. 17 and 20.

[4] Relevant Zoning Code provisions are attached as exhibit A to CM/ECF doc. 28.

where he or she can demonstrate by clear and convincing evidence that his or her tower antennas cannot be located on any other communication tower, building or structure in the geographic area to be served, and that all reasonable means have been undertaken to avoid any undue impact caused by the clustering of towers within an area." Id. § 1224.24(d)(8).

**B.      First Application**

Cincinnati Bell first applied to build a tower at the Kensington site in 2005.  Its application was discussed at Middletown's Planning Commission meetings held on August 10, 2005 and September 14, 2005.  (A.R. at 0188.)   The September 2005 meeting minutes reflect that "Cincinnati Bell Wireless customers in the proposed area of complained about poor reception." (A.R. at 0190; Doc. 30 at 6.)  It was noted that Middletown Community Schools had refused Cincinnati Bell's request to build a tower on the Wilson School property.  (A.R. at 0189.)  It also was noted that Cincinnati Bell had considered co-locating its tower at Middletown Regional Hospital ("MRH") with other telecoms' existing wireless facilities.  There was concern, however, that wireless facilities already located on the hospital property would have to relocate within five years because the hospital was moving to a new location.  (A.R. at 0190.)  Also, a representative of Verizon Wireless stated that Verizon was interested in co-locating with Cincinnati Bell on its tower at the Kensington site.  (Id.)

The Planning Commission voted on September 14, 2005 to deny Cincinnati Bell's application, but also to enter into discussions with MRH about locating wireless facilities around the hospital's smokestack.  (A.R. at 0192.)  The Planning Commission sent Cincinnati Bell a denial letter dated September 16, 2005 which stated in part that the "Planning Commission requests that Cincinnati Bell attempt to re-enter discussions with Middletown Regional Hospital

regarding possible location on Hospital Property at McKnight Drive." (A.R. at 0187.)

Several months later, an agent for Cincinnati Bell sent letters dated February 22, 2006 and March 22, 2006 to Middletown inquiring about the status of talks between the city and MRH on granting a location on hospital property for a wireless tower. (A.R. at 0234, 0236.) The Cincinnati Bell agent also sent a letter dated February 26, 2006 to MRH indicating that Cincinnati Bell wanted to lease property from the hospital to build a wireless tower and providing details as to the proposed project. (A.R. at 0235.) MRH did not respond to Cincinnati Bell's attempts to discuss the proposal. On June 13, 2006, Cincinnati Bell agents met with Marty Kohler, whom is identified by the parties as the Planning Commission's executive director or zoning director, to discuss the Kensington site application again. Cincinnati Bell summarized the June meeting in a letter to Mr. Kohler dated July 11, 2006. (A.R. at 0237-0238.)

The July letter noted that Cincinnati Bell had made unanswered telephone calls to MRH two times per week since it had sent MRH the letter dated February 26, 2006. (Id.) The July letter also stated that "[t]here is an existing and future PCS and/or cellular phone coverage gap, in the City of Middletown" and that "Verizon Wireless and T-Mobile will lose their existing antennas located at the hospital upon demolition of the hospital in the next several years." (Id.) Cincinnati Bell concluded that the "hospital is not interested in pursuing lease negotiations," and therefore, that the company intended to re-file its Kensington site application with the Planning Commission. Mr. Kohler "encouraged" Cincinnati Bell to re-file. (A.R. at 0127.)

C.     Second Application

On or about November 6, 2006, Cincinnati Bell filed a second application with the Planning Commission to construct its tower at the Kensington site. The application requested a

4

variance from the Zoning Code as to the size of the property because the Kensington site was less than four acres.  The application also requested a variance as to the setback requirement. Cincinnati Bell could not satisfy the setback requirement at the Kensington site because it contains an underground reservoir in the middle necessitating that the tower be located twenty-five feet from the nearest residential property line.  (A.R. at 0113.)  Cincinnati Bell did not execute a lease with the City for use of the property before applying to the Planning Commission.          On or about December 13, 2006, the Planning Commission discussed Cincinnati Bell's application at its regularly scheduled meeting.  The meeting minutes and transcript reflect that the Commission again discussed erecting Cincinnati Bell's tower at the existing Wilson School property or the existing MRH property instead of at the Kensington site. Those discussions are set forth in more detail in the analysis that follows.   The Planning Commission voted at the December 13, 2006 meeting to deny Cincinnati Bell's application in favor of pursuing the MRH property alternative again.  On December 14, the City sent a letter to Cincinnati Bell informing the company that the application was denied and which stated in relevant part:

> Planning Commission also made a motion to approach [MRH] within 90 days in an effort to gain their assistance with determining a location for area towers including Cincinnati Bell.

(A.R. at 0182.)

### D.    Procedural History

Cincinnati Bell initiated this lawsuit on January 12, 2007, within 30 days of the Commission's denial of its application.  Defendants are the Planning Commission, seven members of the Planning Commission in their official and personal capacities, and two City

5

Council Representatives on the Planning Commission in their official and personal capacities.

Cincinnati Bell alleges nine causes of actions against Defendants including four counts for

violations of the Act and five counts asserting violations of the U.S. Constitution.  Both parties

have filed motions for partial summary judgment.

## II.   STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a motion for summary

judgment, the movant has the burden of showing that no genuine issues of material fact are in

dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom,

must be read in the light most favorable to the party opposing the motion.  Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof

or by exposing the lack of evidence on an issue for which the nonmoving party will bear the

burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In responding to a

summary judgment motion, the nonmoving party may not rest upon the pleadings but must go

beyond the pleadings and "present affirmative evidence in order to defeat a properly supported

motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R.

Civ. P. 56(e)(2).  The Court's task is not "to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial."  Liberty Lobby, 477 U.S. at

249.  A genuine issue for trial exists when there is sufficient "evidence on which the jury could

reasonably find for the plaintiff."  Id. at 252.

## III.    ANALYSIS

The Act reflects "a deliberate compromise between two competing aims – to facilitate

nationally the growth of wireless telephone service and to maintain substantial local control over

siting of towers."  Telespectrum, Inc. v. Public Serv. Comm'n of Ky., 227 F.3d 414, 423 (6th

Cir. 2000).  The Act states in relevant part:

> (7) Preservation of local zoning authority
>
> (A) General authority
>
> Except as provided in this paragraph, nothing in this chapter shall limit or affect
> the authority of a State or local government or instrumentality thereof over
> decisions regarding the placement, construction, and modification of personal
> wireless service facilities.
>
> (B) Limitations
>
> (i) *The regulation of the placement, construction, and modification of personal
> wireless service facilities by any State or local government or instrumentality
> thereof--*
>
>> *(I) shall not unreasonably discriminate among providers of functionally
>> equivalent services; and*
>>
>> *(II) shall not prohibit or have the effect of prohibiting the provision of
>> personal wireless services.*
>
> (ii) A State or local government or instrumentality thereof shall act on any request
> for authorization to place, construct, or modify personal wireless service facilities
> within a reasonable period of time after the request is duly filed with such
> government or instrumentality, taking into account the nature and scope of such
> request.
>
> (iii) *Any decision by a State or local government or instrumentality thereof to
> deny a request to place, construct, or modify personal wireless service facilities
> shall be in writing and supported by substantial evidence contained in a written
> record.*

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c) (emphasis added).  Both parties have moved for summary judgment as to whether Defendants satisfied four provisions of the Act emphasized herein.

**A.      In Writing Requirement (Count II of the Complaint)**

The Act requires a city denying an application to construct a wireless facility to state its decision "in writing."  47 U.S.C. § 332(c)(7)(B)(iii).  To satisfy this requirement, the writing must "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons."  New Par v. City of Saginaw, 301 F.3d 390, 395-96 (6th Cir. 2002); see also Omnipoint Holdings, Inc. v. City of Southland, 355 F.3d 601, 605 (6th Cir. 2004) (quoting New Par).

Middletown sent Cincinnati Bell a written denial letter dated December 14, 2006 following the Planning Commission's meeting.  The letter stated in relevant part as follows:

In its regular session on Wednesday December 13, 2006, the City of Middletown Planning Commission met and denied the above mentioned application subject to the following:

Kensington Pump Station, Telecom Development Plan
• 	The application as submitted was denied.

> Planning Commission also made a motion to approach Middletown Regional Hospital within 90 days in an effort to gain their assistance with determining a location for area towers including Cincinnati Bell.
>
> * * *  If you have any questions regarding the Planning Commission's action or we can be of further assistance to you, please let us know.

(A.R. at 0182.)

The Court finds that this short letter does not provide the minimum statutory requirements.  The letter does satisfy the first requirement of a writing separate from the Planning Commission's minutes or transcript of the December 13, 2006 meeting.  However, it does not plainly set forth a reason for the denial or an explanation for the reason of the denial. The second and third requirements can overlap in some circumstances and might be satisfied by a single statement in the letter.  Omnipoint Holdings, 355 F.3d at 605 n.3.  This letter satisfies neither.

Defendants contend that the statement that the "Planning Commission also made a motion to approach Middletown Regional Hospital within 90 days in an effort to gain their assistance with determining a location for area towers including Cincinnati Bell" implicitly means that the Planning Commission denied the application because it preferred for Cincinnati Bell to build the wireless facility at MRH.  The Court finds that statement in the letter to be ambiguous and capable of more than one interpretation.  The Defendants' interpretation is reasonable when taken in context with full knowledge of the Planning Commission meeting minutes and transcript.  The letter can also be interpreted, on the other hand, to inform Cincinnati Bell of two separate developments: (1) the application is denied for an unspecified reason and (2) the Commission will approach MRH as an alternative site.  (A.R. at 0182 ("Planning

Commission *also . . . .*" (emphasis added)).)  Even assuming that the letter did provide the reason

for the denial – the Commission preferred the alternative site at MRH – it fails to provide any

explanation for the reason.  Defendants point to specific statements made during the Planning

Commission meeting to support their preference for the MRH site, but those statements are not

repeated or summarized in the letter.  Accordingly, the Court holds that the denial letter did not

satisfy the writing requirement.  Summary judgment is granted to Cincinnati Bell and denied to

Defendants on Count II of the Complaint.

**B.      Substantial Evidence Standard (Count I of the Complaint)**

The Act requires Defendants to support their decision to deny Cincinnati Bell's

application with "substantial evidence."  47 U.S.C. § 332(c)(7)(B)(iii).  The Sixth Circuit has

explained the substantial evidence requirement as follows:

> [C]ourts have concluded that the "substantial evidence" standard of section 332 is the
> traditional standard employed by the courts for review of agency action.  The legislative
> history reflects this as well, saying that "[t]he phrase, 'substantial evidence contained in
> the written record' is the traditional standard used for judicial review of agency actions."
> H.R. Conf. Rep. No. 104-458 (1996).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as
> adequate to support the conclusion.  This Court reviews the entire record, including
> evidence opposed to the result of the decision.  We look to whether the agency explained
> any credibility judgments it made and whether it gave reasons for crediting one piece of
> evidence over another.  This Court must examine the evidence as a whole, taking into
> account whatever in the record fairly detracts from its weight.

Telespectrum, 227 F.3d at 423 (citations and quotations omitted).  Substantial evidence is "more

than a mere scintilla."  Laurence Wolf Capital Mgmt. Trust v. City of Ferndale, 61 F. App'x 204,

213 (6th Cir. 2003).

The issue is whether the Planning Commission had substantial evidence following the

December 13, 2006 Planning Commission meeting to deny Cincinnati Bell's second application

to build a tower at the Kensington site.  There was relatively little discussion at the meeting

regarding the proposed tower or the Kensington site itself.   The discussion at the meeting,

rather, focused on whether a new wireless facility was needed and whether the facility could be

located at the existing MRH property instead.  The Planning Commission staff had

recommended approving Cincinnati Bell's Kensington site application prior to the meeting.

(A.R. at 0004.)

The staff notes indicated that, with the possible exception of the hospital, no other

locations existed for a Cincinnati Bell wireless facility which would not raise similar concerns to

the Kensington site.  (A.R. at 0003-0004.)  Mr. Kohler informed the Commissioners at the

meeting that the existing MRH hospital property would be "an ideal location for cell equipment"

because "of the height of its smokestack . . . and the height of the current buildings at the

hospital."  (A.R. at 0114.)  However, he stated that MRH was vacating that property in "less than

a year" and that he believed the buildings would be demolished after that.  (A.R. at 0114-0115.)

Mr. Kohler stated that MRH had told four telecoms who had located wireless facilities on the

hospital property that their leases would be terminated upon demolition of the buildings.  (A.R.

at 0115.)  Mr. Kohler concluded that "there will be a need for some sort of cellular transmission

to cover the central portion of town, otherwise the residents would not have service."  (Id.)  He

expressed concern about the possibility of a wireless service "black out in two years" in the area

once MRH vacated the existing hospital property.  (A.R. at 0128.)  Mr. Kohler also stated his

understanding that "[t]he hospital does have some concerns [about negotiating for any new

wireless facilities at the site], that they do not necessarily want to encumber that site with a cell

tower that may conflict with a possible redevelopment scenario for that property . . . ."  (A.R. at

0118.)

Despite these statements by Mr. Kohler, Defendants contend that there was substantial evidence to deny Cincinnati Bell's application for the Kensington site facility in favor of the MRH property.  Defendants' evidence consists of the following: (1) a Zoning Code preference to co-locate multiple telecoms on each wireless facility; (2) information that Verizon was negotiating again with MRH to construct a wireless facility at the existing hospital property; and (3) new information that MRH intended to leave at least one building standing on the existing hospital property.

Consistent with the Zoning Code, the Planning Commission's goal was to "[M]inimiz[e] the number of towers . . . around town."  (A.R. at 0119.)  Mr. Kohler stated that Verizon also expressed an interest in the constructing a wireless facility at the hospital site and had told Cincinnati Bell that they would be willing to co-locate at the hospital property.  (A.R. at 0108.) Mr. Kohler attended a meeting between MRH and Verizon.  Mr. Kohler stated that MRH and Verizon had agreed on a location at the hospital property for a wireless facility, but that Verizon had not agreed to the price.  (A.R. at 0117-0118.)  A concern was voiced that Middletown could have too many new wireless facilities if the Planning Commission approved Cincinnati Bell's application for the Kensington site and Verizon built its tower at the existing MRH hospital site. (A.R. at 0150-0151.)  Finally, an unidentified speaker, presumably a Commission member, stated that he heard during a tour of the new hospital site that MRH would leave standing at the existing hospital property the southern most tall building.[5]  (A.R. at 0129-131.)  The meeting transcript contains several "inaudible" portions, but it appears the building to remain standing

---

[5] Cincinnati Bell assumes the speaker was a Planning Commission member in its briefs.

carried antennas on the roof.  (Id.)  Defendants contend that the "facts" that the MRH had

negotiated with Verizon about a tower and that MRH might leave a building standing made it

reasonable to require Cincinnati Bell again to investigate constructing its tower at the hospital

property.

Cincinnati Bell challenges each of these proposed facts and the assumptions underlying

them.  Regarding the Zoning Code's preference for co-location, the proposed Kensington

wireless facility was designed to accommodate co-location.  (A.R. at 0003.)  Cincinnati Bell

reminded the Planning Commission at the December 2006 meeting that Verizon had indicated in

2005 its willingness to use the proposed Cincinnati Bell wireless tower at the Kensington site.

(A.R. at 0108, 0145, 0190.)  Mr. Kohler verified that Verizon was interested in the Kensington

site.  (A.R. at 0127.)  Accordingly, permitting the Kensington tower could facilitate co-location.

In addition, the Zoning Code's preference for co-location did not override the Commission's

duty under the Act to avoid decisions which constituted unreasonable discrimination or which

could not be supported by substantial evidence.  See 47 U.S.C. § 332(c)(7)(B)(i) & (iii).

Additionally, the "evidence" that MRH would negotiate a lease with Cincinnati Bell is

speculative and inconclusive.  The fact that MRH may have been negotiating with Verizon does

not establish that the MRH would negotiate with Cincinnati Bell. The unrefuted evidence before

the Commission indicated that MRH had ignored Cincinnati Bell's repeated inquiries over

several months about building a wireless facility.  (A.R. at 0132, 0142.)  Mr. Kohler had

acknowledged to the Planning Commission that "Cincinnati Bell had tried on numerous

occasions to meet with the hospital . . . and were not particularly successful."  (A.R. at 0117.)

The testimony of the Commission member who stated that at least one building at the

13

existing MRH hospital site would not be demolished raised more questions than it answered.

The member did not identify from whom he heard this information or why the information was

credible.  The Planning Commission had not verified this information, which appeared to

constitute a significant change in MRH's plans.  Even if the new information was accurate, the

Commission member was not told that MRH would accept a new Cincinnati Bell wireless

facility on the remaining building.  Nor was the Commission member told that MRH no longer

intended to cancel the existing leases of four telecoms who located facilities at the hospital

property.  In sum, Defendants fail to adequately explain why they give more credibility and

weight to evidence suggesting the viability of the MRH property than they do to evidence that

MRH had been unwilling to permit a Cincinnati Bell tower.  Telespectrum, 227 F.3d at 423

(stating that decisionmaker must explain why some evidence is credited and other evidence is

not).

Based the totality of the record, the Defendants did not have substantial evidence to deny

the Kensington site application in favor of a location that had not been established as a viable

alternative.  Summary judgment again is granted to Cincinnati Bell and denied to Defendants on

Count I of the Complaint.

**C.**    **Unreasonably Discriminate (Count III of the Complaint)**

The Act also prohibits Middletown from "unreasonably discriminat[ing] among providers

of functionally equivalent services."  47 U.S.C. § 332(c)(7)(B)(i)(I).  To establish a violation of

this subsection, a plaintiff must prove "more than mere unequal treatment" of different telecoms.

Laurence Wolf Capital Mgmt. Trust, 61 F. App'x at 219, 220.  A plaintiff must prove that the

city granted "unreasonable" and "preferential treatment" to a competing telecom.  Id.  The Sixth

Circuit did not find a violation of the "unreasonably discriminate" provision where a city refused

to grant a variance application to the telecom plaintiff because the competing telecom provided

coverage to the area without requiring a variance.  Laurence Wolf Capital Mgmt. Trust, 61 F.

App'x at 220.

The Court finds that the Planning Commission did unreasonably discriminate against

Cincinnati Bell.  Initially, Cincinnati Bell has not established that the City provided preferential

treatment to another telecom which it denied to Cincinnati Bell.  No other telecom company had

sought and been granted a variance to build a wireless facility on the Kensington site or at a

similar residential zoned site.  However, at the time of Cincinnati Bell's application, Cincinnati

Bell had a recognized service area deficit in the central Middletown area in which other telecom

companies were able to provide service by means of their existing MRH property facilities.

(A.R. at 0114-0115.)  Substantial evidence established that MRH had refused Cincinnati Bell's

attempts to discuss placing a wireless facility at the hospital property.  The Planning

Commission staff had determined that any other potential sites in the area would raise concerns

similar to the Kensington site.  (A.R. at 0004.)  The combination of the facts that Cincinnati Bell

had no other viable alternatives, and that the Planning Commission did not have substantial

evidence to deny Cincinnati Bell's application, amounted to a denial which unreasonably

discriminated against Cincinnati Bell in violation of the Act.  See Sprint Spectrum, L.P. v. Mills,

65 F. Supp. 2d 148, 157 (S.D.N.Y 1999) ("[B]ecause the Department's denial was not supported

by substantial evidence, as explained above, its action amounts to unreasonable

discrimination."); Sprint Spectrum L.P. v. Jefferson Cty., 968 F. Supp. 1457, 1467-68 (N.D. Ala.

1997) (finding a denial without a legitimate basis to constitute unreasonable discrimination).

Summary judgment is granted to Cincinnati Bell and denied to Defendants on Count III of the Complaint.

**D.      Prohibit the Provision of Personal Wireless Services (Count IV of the Complaint)**

Finally, the Act provides that Middletown's regulatory scheme cannot "prohibit or have the effect of prohibiting the provision of personal wireless services."  47 U.S.C. § 332(c)(7)(B)(i)(II).  The scope of this subsection includes both general prohibitions or bans on wireless service facilities, and "[p]olicies that are facially neutral [but] have the effect of prohibiting service if those policies . . . have the necessary result that all possible sites in a given area will be rejected."  Laurence Wolf Capital Mgmt. Trust, 61 F. App'x at 220-21.  To prevail on its effective prohibition claim, a plaintiff must establish: (1) that the city's "decisions and ordinances prevent the closing of significant gaps in the availability of wireless services; and (2) that from language or circumstances not just that its application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." T-Mobile Cent., LLC v. City of Grand Rapids, No. 1:06-CV-747, 2007 WL 1287739, *5 (W.D. Mich. May 2, 2007) (internal quotations and citation omitted).  At least two Circuit Courts of Appeals have held that a telecom plaintiff must "show more than that it was denied an opportunity to fill a gap in its service system."  APT Pittsburgh Ltd. P'ship v. Penn Tp. Butler Cty. of Pa., 196 F.3d 469, 480 (3rd Cir. 1999); see also VoiceStream Minneapolis, Inc. v. St. Croix Cty., 342 F.3d 818, 834 (7th Cir. 2003) (same).

The Sixth Circuit held that the § 332(c)(7)(B)(i)(II) was not violated when the following evidence was presented:

> This [evidence that the plaintiff had two existing wireless facilities in the City of
> Ferndale] shows that the Board does approve applications under the Ordinance.

> Moreover, the Ordinance does not prohibit placement of wireless service facilities on all private properties.  Instead, it limits such facilities to certain zoning districts and requires administrative approval.  No evidence exists in the record to suggest that Ferndale has consistently denied such administrative approvals.  Therefore, the record contains no evidence that the Ordinance effectively prevents wireless communication services.

Laurence Wolf Capital Mgmt. Trust, 61 F. App'x at 221.

Cincinnati Bell does not contend that the Zoning Code as written results in a general ban on wireless service facilities.  The Zoning Code permits the construction of wireless facilities in multiple zoning districts, including residential districts within certain parameters.  Additionally, Cincinnati Bell concedes that, at least at the time of its application, other wireless telecom companies provided service to the relevant area in Middletown.[6]  The evidence established a gap in Cincinnati Bell's coverage area, but not in wireless service availability overall.[7]  Again, this provision of the Act generally is not violated by the denial of a single telecom's opportunity to cure a service gap.  See APT Pittsburgh Ltd. P'ship, 196 F.3d at 480; VoiceStream Minneapolis, Inc., 342 F.3d at 834.  Accordingly, though the denial of Cincinnati Bell's application was not supported by substantial evidence and it constituted unreasonable discrimination against

---

[6] Earlier, the Court found that Defendants lacked substantial evidence to deny Cincinnati Bell's application.  The Court implicitly found that Defendants could not rely on speculative and inclusive evidence that MRH might permit a Cincinnati Bell wireless facility on its existing property, especially considering that MRH had repeatedly refused to negotiate with Cincinnati Bell for more than a year.  Likewise, the Court cannot accept as fact the predictions that there would be a wireless service black out in central Middletown affecting all the telecoms because MRH intended in the future to demolish the buildings and wireless facilities on its existing properties.

[7] The Court rejects Defendants' argument that Cincinnati Bell's evidence concerning its coverage gap was not sufficient because Cincinnati Bell did not provide the specific number of subscribers affected.  Such detailed evidence is not required here because the City did not challenge Cincinnati Bell's statements regarding the coverage gap at the Commission meetings.  The Planning Staff, in fact, confirmed the coverage gap.

Cincinnati Bell in favor of other telecoms, the denial did not prohibit the provision of personal wireless services in Middletown.

Summary judgment is granted to Defendants and denied to Cincinnati Bell on Count IV of the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Cincinnati Bell Wireless' Motion for Summary Judgment (doc. 22) is **GRANTED IN PART AND DENIED IN PART** and Defendants Motion for Partial Summary Judgment (doc. 25) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted to Cincinnati Bell as to Counts I, II, and III of its Complaint. Summary judgment is granted to Defendants as to Count IV of the Complaint.

IT IS SO ORDERED.


S/Susan J. Dlott
Susan J. Dlott
United States District Judge